IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHAD WOMBLES, *et al.*, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  3:03cv1158-C |
| ) | (WO) |
| TITLE MAX OF ALABAMA, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is now before the court on the plaintiffs' February 10, 2004, motion to facilitate class notice pursuant to 29 U.S.C. § 216(b), or in the alternative, issue partial notice. (Doc. # 23).  The plaintiffs brought this action to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. The five plaintiffs seek to pursue this matter as a collective action under the FLSA, and allow notice to "all current and former "Managers," "Assistant Managers," and "Over Staff Managers" of Defendants for the last three (3) years." (Mot. to Facilitate Reg'l Class Not. at 1).  Since the filing of the complaint, the original five plaintiffs and two other potential plaintiffs have filed Consents to Become Party Plaintiffs.  Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

On July 21, 2004, the court held an evidentiary hearing specifically to address whether this court should certify a collective action and issue notice to potential opt-in class members.

*See* 29 U.S.C. § 216(b). The court permitted limited discovery solely on the issue of regional class notice and collective action status in this matter. After careful consideration of the motion to facilitate regional class notice, the briefs and evidentiary materials filed in support of and against the motion, and evidence presented at the evidentiary hearing, the court concludes that the plaintiffs' motion to facilitate regional class notice is due to be denied.

## II.  STANDARD FOR CERTIFICATION OF COLLECTIVE ACTION

29 U.S.C. § 216(b) provides in pertinent part as follows.

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. . . .

The court has the "discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential class members." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). *See also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001) ("The decision to create an opt-in class under § 216(b), like the decision to certify a class under Rule 23, remains soundly within the discretion of the district court.") The court must carefully exercise its discretion when permitting notice and must authorize notice in only appropriate cases. *See Haynes v. Singer Co.*, 696 F.2d 884, 886 (11th Cir. 1983). The plaintiffs bear the burden of demonstrating a "reasonable basis" for their claim that this matter warrants collective action status. *Grayson v. K-Mart Corp.*, 79 F.3d 1086,

1097 (11th Cir. 1996); *Haynes*, 696 F.2d at 887.

> The plaintiffs may meet this burden, which is not heavy, by making substantial allegations . . . that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary.

*Hipp*, 252 F.3d at 1219.  *See also Grayson*, 79 F.3d at 1097.

### III.  FACTS

The plaintiffs, the potential consent plaintiffs, and the potential collective action members in this case are or have been employed at different Title Max Lending stores in the Columbus, Georgia, La Grange, Georgia and Opelika, Alabama areas as assistant managers and managers.[1] The plaintiffs allege that they "were routinely required to work in excess of forty (40) hours per week despite the fact overtime compensation was never paid for the hours exceeding forty (40)." (Declaration of Chad Wombles, Pl's Ex. A, at p. 1, ¶ 6.)  The plaintiffs allege that they were required to attend mandatory meetings after store hours; were required to call or chase accounts after normal business hours; and worked between 70-75 hours per week, all without overtime compensation.  According to the plaintiffs, because Store Managers perform non-managerial duties, do not supervise two or more employees and cannot hire, fire or discipline employees, they are improperly classified as exempt.

The defendants asseverate that managers are exempt from overtime compensation and that assistant managers were specifically directed not to work in excess of 40 hours a week. According to the defendants, if any assistant manager worked more than 40 hours a week,

---

[1] Although the plaintiffs also allege that they were "Over Staff" managers, they have presented no evidence to support including "Over Staff" managers in any collective action.

the employee was either given compensatory time off or overtime pay. They also contend that Store managers are exempt under the administrative or executive exemptions of the FLSA.

### IV. DISCUSSION

The plaintiffs request that this court "(1) authorize the instant action to proceed as a region-wide collective action, (2) order the identification of the potential opt-ins, and (3) authorize the issuance of Plaintiffs' proposed notice . . . to all present and former "Managers," "Assistant Managers," and "Over Staff Managers" of the Defendants informing them of their rights to participate as opt-in Plaintiffs in this action." (Pls' Mem. in Supp. of Mot. to Facilitate at p. 2). They request this for all present managers, assistant managers and over staff managers from three years prior to and beginning on the date of filing the complaint in this action. (*Id.*)

Collective action treatment under § 216(b) reflects a policy in favor of judicial economy by which "the judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." *See Hoffman-La Roche, Inc.*, 493 U.S. at 170. Accordingly, the Eleventh Circuit has held that a district court should make certain determinations before allowing an individual plaintiff to give notice to other potential members of a collective action under the FLSA. Specifically, "the district court should satisfy itself that there are other employees of the defendant-employer who desire to 'opt-in' and are 'similarly situated' with respect to their job

requirements and with regard to their pay provisions." *Dybach v. Fla. Dep't of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991). This court has denied collective action status when the court has found insufficient proof that there were similarly situated persons who desired to join the lawsuit. *See Horne v. United Auto. Ass'n*, 279 F. Supp.2d 1231 (M. D. Ala. 2003).

The five plaintiffs allege, in nearly identical affidavits that they "believe . . . that given the opportunity the other "Managers," "Assistant Managers," and "Over Staff Managers" would join in this lawsuit." (Declaration of Chad Wombles, Pl's Ex. A, at p. 2, ¶ 16; Declaration of Danny Wombles, Pl's Ex. B, at p. 2, ¶ 16; Declaration of Jeff Pention, Pl's Ex. C, at p. 2, ¶ 16; Declaration of Ronnie Welborn, Pl's Ex. D, at p. 2, ¶ 16; Declaration of Mark Carnes, Pl's Ex. E, at p. 2, ¶ 16.). While Steve Knight and Wendy Clark filed notices of consent to become a party plaintiff, the plaintiffs have identified no other employees who they contend would want to join in a collective action. During the evidentiary hearing held on the issue of collective action status, none of the plaintiffs identified any other employee who expressed an interest in joining this litigation. On the other hand, the defendants have submitted affidavits of 46 employees in opposition to the motion for collective action status. The plaintiffs' unsubstantiated belief about other employees' willingness to join this action and their inability to identify more than two other employees willing to join shows that the plaintiffs have not met their burden. Consequently, the court concludes that the plaintiffs have failed to demonstrate that there are other employees who desire to opt in to this action.

In addition, the plaintiffs bear the burden of establishing that they and the group they

wish to represent are similarly situated. *See Grayson*, 79 F.3d at 1096. While the meaning of "similarly situated" is not defined in the FLSA, the Eleventh Circuit has held that the "similarly situated" requirement is "more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance) . . . [and] that a unified policy, plan, or scheme of discrimination may not be required to satisfy the more liberal 'similarly situated' requirement of § 216(b)." *Id.*, at 1095. *See also, Hipp*, 252 F.3d at 1219. "For an opt-in class to be created under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of others employees "similarly situated." *Grayson*, 79 F.3d at 1096. The plaintiffs "must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions." *Holt v. Rite Aid Corp.*, 333 F. Supp.2d 1265, 1270 (M.D. Ala. 2004) (citing *Marsh v. Butler Co. Sch. Sys.*, 242 F. Supp. 2d. 1086, 1093 (M.D. Ala. 2003); *White v. Osmose*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002). "Without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity of abuse." *Id*.

In this case, the plaintiffs have failed to provide evidence that any persons who desire to opt in are similarly situated. First, the uncontroverted evidence demonstrates that Assistant Store Managers do not have the same duties or responsibilities as Store Managers and Assistant Store Managers are all classified as non-exempt and eligible for overtime; they are not similarly situated to Store Managers. Furthermore, during the evidentiary hearing,

plaintiff Welborn admitted that he knew assistant managers were not to work more than 40 hours per week and testified that he did not work his assistant manager more than 40 hours a week. (Evid. Hr'g Tr. at 29-30). The plaintiffs also admitted that they have no personal knowledge of how other Title Max stores were operated or whether any other managers allowed assistant managers to work more than 40 hours a week. (*Id*. at 31). Finally, at least one plaintiff filed a contradictory affidavit in another case in which he stated that he "never allowed an assistant manager to work more than 40 hours during a week. . . I never saw, knew of, or heard about any assistant managers at other branches working more than 40 hours per week." (Aff. Ronnie Welborn, Ex. 1A, at p. 4, § 16.) Consequently, the court concludes that the plaintiffs have not carried their burden of showing that Assistant Managers are similarly situated to Store Managers or the plaintiffs in this case. Therefore, it is not appropriate for this Court to order notice to Assistant Store Managers, or allow them to proceed as part of a collective action with these plaintiffs as they are not similarly situated.

Before certifying this matter as a collective action with respect to Store Managers, the court must essentially answer two questions: first, whether the mere classification as a Store Manger is sufficient to establish that the putative collective action members are similarly situated, or whether individuals' job duties must be scrutinized; and, second, the degree to which evidence regarding the job duties of these particular plaintiffs can be applied to other Title Max Store Managers generally.

In this case, the 'similarly situated' inquiry begins with an analysis of the nature of the

job duties of the putative plaintiffs. The plaintiffs rely on their testimony that they did not supervise more than two employees and did not have the authority to hire, fire or discipline subordinates to argue that they were improperly classified as exempt.[2] They contend, in nearly identical affidavits, that all Store Managers perform essentially the same daily tasks and to the same degree. This contention is simply inconsistent with the evidence presented at the evidentiary hearing.[3]

Significantly, the evidence presented at the evidentiary hearing demonstrates that the plaintiffs are not similarly situated either among themselves or with other Store Managers. Plaintiff Jeffrey Penton testified that when he was Store Manager at U.S. Title on Buena Vista Road, he supervised no employees. Plaintiff Ronnie Welborn testified that he had only supervised one employee, and Rocky Butts testified that he usually supervised two or more employees. (*Compare* Evid. Hr'g Tr. at 145, 29 and 67, 87, 89). In addition, Welborn testified that he had no discretion to hire or fire employees, although he conceded that he did recommend the termination of an employee. In contrast, Butts testified that he had recommended three assistant managers for employment and he was authorized to fire people but had not had occasion to do so yet. (*Compare* Evid. Hr'g Tr. at 21-22 and 56.) Butts also

---

[2] The plaintiffs present no evidence regarding the amount of time they or other store managers spend on managerial and non-managerial tasks. Nor do they present any evidence from which the court could ascertain the importance of managerial tasks and collateral assignments or the difference in wages paid to hourly associates versus executives.

[3] Because the parties conducted extensive discovery on the issue of collective action certification, "it is appropriate [for the court] to carefully consider the submissions of the parties with respect to the collective action allegations." *Holt*, 333 F. Supp. 2d at 1274 (citing *White*, 204 F. Supp. 2d at 1313). *See also Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 498 (D.N.J. 2000) (applying a stricter standard where discovery has been conducted.)

testified that

Store Managers had discretion about when to repossess vehicles. Prospective consent plaintiff Steve Knight, who was employed as an assistant manager, testified that all the stores in which he worked had different ways of doing business. He also conceded that he did not know how other stores were operated.

District Manager Wendy Tate testified that store practices differ between states including between Georgia and Alabama. (Evid. Hr'g Tr. at 69-71). She also testified that staffing differs between stores (*Id*. at 127-28). Tate further testified that managers have the authority to reprimand their employees and authority to recommend hiring and firing employees. (*Id*. at 100, 119). Tate testified that Store Managers have discretion to repossess vehicles and make all loans up to a dollar certain amount. Store Managers are responsible for tracking employees hours to ensure that non-exempt employees do not work overtime. Finally, Tate testified that Store Managers have authority and responsibility for all daily store operations.

The plaintiffs also seek to establish that Store Managers are similarly situated by pointing to documentation from the Department of Labor to support their contention that the defendants have improperly failed to pay overtime pay. (Pls' Reply to Defs' Opp. to Mot. to Facilitate Reg'l Class Notice at 2-3). Specifically, the plaintiffs assert that "[t]he DOL's findings that back wages are due the seventy-nine (79) employees interviewed is both evidence of "similarly situated" individuals and individuals that would be potential opt-ins."

(*Id*. at 3). The problem with the plaintiffs' position is however, all of the documents from the Department of Labor relate to stores in the Atlanta and Savannah areas – areas other than Columbus, LaGrange, and Opelika where the plaintiffs were employed. (Evid. Hr'g Tr. at 5). It is undisputed that none of the employees referenced in the Department of Labor documents were employed in a store in the Columbus, LaGrange or Opelika area. Consequently, the documentation from the Department of Labor is simply insufficient to establish that those employees are in any way "similarly situated" to the plaintiffs in this case.

The parties in this case have presented sufficient evidence at this stage to demonstrate that a determination as to whether or not other potential plaintiffs are similarly situated would require a fact-specific, case-by-case intensive inquiry of each plaintiff by the court. In order to make this determination, the court would have to inquire into each employee's daily job duties. This is the minimum level of inquiry; for some employees, including the named plaintiffs in this case, the inquiry would need to go further – looking into the number of employees supervised, the employee's ability to recommend hiring, firing and reprimanding employees, the employee's level of discretion and freedom from supervision, and the amount of time the employee spends performing non-managerial tasks. Indeed, this is the very type of analysis demanded by the regulations implementing the FLSA, under which job titles are insufficient to establish exempt status. 29 C.F.R. § 541.2. "The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary

and duties meet the requirements of the regulations in this part." *Id.*[4]  Once the court evaluated each plaintiff's daily job duties, the court would then be in a position to determine whether that particular employee was properly classified as an exempt employee.

Without making any credibility determinations, but merely considering all of the evidence presented, the court cannot conclude at this juncture that all Store Managers employed by Title Max, even within the district that includes the Columbus, LaGrange and Opelika stores, are similarly situated.  Consequently, any determination about whether an employee was properly classified as an exempt employee must be an individualistic, fact-specific determination.  Accordingly, the court concludes that the plaintiffs have failed to meet their burden of demonstrating that they are similarly situated to other employees to certify this action as a collective action under the FLSA.

The court is cognizant of the FLSA's broad remedial purpose.  However, "courts, as well as practicing attorneys, have a responsibility to avoid the "stirring up" of litigation through unwarranted solicitation."  *Brooks v. Bellsouth Telecommunications, Inc.*, 164 F.R.D. 561, 567 (N.D. Ala. 1995).  Given the state of the evidence, certifying a collective

---

[4] The Code of Federal Regulations provide a "short test" to classify employees for purposes of the executive exemption.  This test provides that an employee can be classified as an exempt executive if: (1) the employee is paid a salary of not less than $455 per week, (2) the employee's primary duty is the management of the enterprise or a subdivision, (3) the employee customarily and regularly directs the work of two or more employees, and (4) the employee has the authority to hire or fire other employees, or the authority to recommend such actions.  29 C.F.R. § 541.1(a).  The regulations also provide a short test to classify employees under the administrative exemption.  This test provides that an employee can be classified as an exempt administrative employee if: (1) the employee is paid a salary of not less than $455 per week, (2) the employee's primary duty is the performance of office or non-manual work directly related to the management or general business of the employer, and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  29 C.F.R. § 541.2

action in this case would undermine, rather than promote, judicial efficiency.  Accordingly, the court concludes that collective action status is not appropriate in this matter.

## CONCLUSION

Accordingly, it is

ORDERED as follows:

1. That the plaintiffs' motion to facilitate regional class notice pursuant to 29 U.S.C. § 216(b) or in the alternative, issue partial notice (doc. 23) be and is hereby DENIED;

2. That the plaintiffs motion to amend or correct the complaint (doc. # 76) be and is hereby DENIED; and

3. That the defendants' motion to strike Consent of Party Plaintiff Wendy Clark (doc. # 84) be and is hereby GRANTED.

Done this 7th day of December, 2005.

        /s/Charles S. Coody
        CHARLES S. COODY
        CHIEF UNITED STATES MAGISTRATE JUDGE